# PAUL W. SIEGERT

*Attorney & Counselor at Law*

50 Rockland Avenue

Yonkers, New York 10705

**Tel: (212) 564-8181**

Fax: (212) 564-4414

Email: paulsiegert@aol.com

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

From:        Paul W. Siegert

To:           The Hon. Jessica G.L. Clarke

Subj:        United States v. Abdulai Jalloh
             23 Cr. 592

Date:        June 5, 2025

This Court has undoubtedly considered a large number of memoranda submitted by defense counsel seeking a sentence as lenient as reasonably possible for their clients. Some arguments are based on the deterent and protective purposes of sentencing and their inapplicability thereby warranting a sentence below the guidelines advisory range. Some are based on the rehabilitative purposes of sentencing. Others are based on 18 U.S.C. §3553(a) mandating that a court "impose a sentence sufficient, but not greater than necessary, to comply with" federal sentencing goals. This memorandum focuses on the defendant as a "challenged" person who is easily led, his family, his lack of education, the crime, and his relevant history.

## 1.    Defendant's Role in Trademark Counterfeiting

As noted in the Presentence Investigation Report, the defendant was born in Sierra Leone and immigrated to the United States in 2012. Many members of his

family (including his mother and father) were murdered during a civil war in Sierre

Leone and he had to flee the country to adjoining Guinea. His only education was almost entirely in religion at Muslim schools in Africa and even this limited education stopped in the eighth grade. As a result, he is markedly deficient in reading, writing, arithmetic and other subjects typically and routinely taught to children. This background coupled with no skills means that the defendant's chances of securing meaningful employment and wages were, and are, virtually non-existent. He is relegated to seeking the most menial jobs while trying to support a family of seven.

This family includes 5 children with the youngest being born only about one year ago. Defendant is a poor man and lives with three other men in an apartment. They all share the rent. The defendant cannot afford to pay rent independently so he cannot live with his wife. Therefore, she lives in a New York City shelter. But she is a loving wife and accompanied her husband in support (along with 14 other of defendant's friends concerned for his welfare) to the court when he pled guilty to the sole counterfeiting Count before Judge Robert W. Lehrburer on January 2, 2025.

With respect to the crime to which defendant pled guilty, the defendant obtained employment through a person named Ibrahim Diallo who paid defendant to work each day essentially to move boxes in a warehouse. Because defendant is simple-minded and easily led, he was at the mercy of Mr. Diallo who controlled by him in the counterfeit operations. Defendant was grateful for the job and stated at his plea hearing that he was initially unaware of the counterfeit merchandise at the time he was hired. But,

admittedly, he subsequently learned that the merchandise was counterfeit but he needed

the job and Diallo even paid him a few extra dollars if he sold an item.

The Government knows that defendant was at the very bottom of the totem pole and was nothing more than a salaried employee paid on a weekly basis to accept and move boxes in a storage unit. He was moving boxes at the time the storage unit was raided. The owner of the business and the person making huge profits was Ibrahim Diallo. But to defendant's understanding, this person has never even been sought or arrested by authorities. Another person profiting handsomely was a Chinese man. He supplied and sold the counterfeit merchandise to Mr. Diallo. Again, to defendant's understanding, this person has also never been sought or arrested by authorities. In fact, in furtherance of a possible plea agreement with AUSA Henry Ross, I mentioned the roles of these cohorts but I was simply told that the Government was aware of these individuals and Mr. Jalloh's coooperation was not needed.

Despite the (i) nature and circumstances of defendant's limited role, (ii) the lack of a criminal history and (iii) the sad characteristics of defendant, the Government will harp on its only feasible argument i.e., there was "*millions of dollars in counterfeit merchandise*" in the warehouse. But the defendant had nothing to do with the amount or value of merchandise in the warehouse. The defendant also had nothing to do with supplying merchandise to the warehouse or selling it to Mr. Diallo . . . be it worth $10.00 or $10,000.000. This is a case where the legal tenet that "each defendant should be sentenced based on their individual conduct" should be applied.

## 2.  Defendant's Inability to get two co-signers for a Bond

Mr. Jalloh's friends and associates are all recent immigrants to the United States from Africa. At the time of his arrest, he was supposed to get two co-signers for a bond, but he was unable to do so because none of his family or friends had enough assets to qualify. They are largely street peddlars, taxi and delivery drivers, and hard workers at low-paying jobs. But this is the way virtually all immigrants to America started their lives. Anyway, in December, 2024, the Government asserted to the Court that "multiple requests made by the Government to defense counsel over the course of more than one year - and as recently as last week - "have not resulted in any cosigners. That representation to the Court was disingenuous because there were no requests for a solid year until only one request was made shortly before the Government's communication to the Court. Regardless, the point is that Probation and the U.S. Attorney's Office both knew that Mr. Jalloh could not get cosigners. But realizing that he was nonviolent, had no criminal history, was poor, and that he complied with all conditions of pre-trial release while following all Court directives concerning appearances, both agencies abandoned efforts to insist upon cosigners and defendant was never detained. [1]

---

[1]  The Government also engaged in extensive hyperbole by alleging that Mr. Jalloh was a "foreign national" and that there was a "significant risk of flight." Quite to the contrary, defendant was a lawful permanent resident of the United States and there was no risk of flight whatsoever as demonstrated by the Government and Probation Department abandoning efforts to have cosigners.

### 3. **Seriousness of the Offense - Just punishment**

The irony of trademark counterfeiting charges and punishment is that each depends upon the value of the merchandise. The defendant's conduct was essentially always the same i.e., receiving and moving boxes in a storage room. If Mr. Diallo (the owner) had visited the storage area 1 day before the raid and removed the bulk of the merchandise, defendant would be facing a minor charge and the virtually certainty of probation. On the other hand, if Mr. Diallo had visited the storage area 1 day before the raid and stored millions of dollars of additional merchandise, then defendant would be facing many years in prison. But defendant worked for his family's support and did not even profit from the counterfeiting operation.

### 4. **Deterrence**

Mr. Jalloh is not a danger to anyone. He is a timid person who neither smokes nor drinks. He does not take drugs. He is uneducated but tries to support his family to the best of his ability. He is not violent. He is a religious person and asked on several occasions that the court modify his curfew so he could attend religious services. There is nothing to suggest that incarceration is needed to protect society from Mr. Jalloh. His mundane conduct, although criminal, is not deserving of a prison sentence and a fair-minded person would literally shudder at the thought of this man being placed in an institution with hardened criminals.

This past weekend, my wife received her Masters of Divinity and was ordained as an evangelical minister. At her ordination, the pastor quoted from Romans 3:23-24

that "all have sinned and fall short of the glory of God . . . " But a distinction was made

between sin and wickedness. Like all of us, Mr. Jalloh has sinned but he is not wicked. There are no evil thoughts or actions in this man. He is penitent.

If probation is deemed available, it should be imposed. If it is not available, then it is respectfully urged that the Court impose a significant variance outside of the sentencing guidelines especially because the guidelines do not seem to address the unique circumstances surrounding this defendant. [2] The Court should also balance the factors raised herein as against the inherent, unduly-weighted unfairness of the merchandise's value being virtually the only factor militating against this defendant.

Dated:      Yonkers, New York
            June 5, 2025

                                        Respectfully submitted,


                                        _____

                                        **PAUL W. SIEGERT**
                                        Attorney for Defendant
                                        Office & P.O. Address
                                        50 Rockland Avenue
                                        Yonkers, NY 10705
                                        **Tel:    (212) 564-8181**
                                        Fax:    (212) 564-4414
                                        Email: paulsiegert@aol.com

---

[2] In my April 14, 2025 letter to the Court, I requested an adjournment of sentencing and said "that somewhat eerily, I had virtually an identical case to this one (i.e., trademark counterfeiting) scheduled for trial in the Supreme Court, New York County, on Monday, April 7, 2025." In that case, the defendant was the owner and promoter of an extensive counterfeit operation and 19,000 counterfeit items were recovered. He pleaded guilty just before the trial was to begin. To show the disparity between State and Federal sentencing, the defendant was sentenced to 5 years probation plus payment of court statutory costs.